All right, our final case this morning is Lupia v. Medicredit 20-1294. Ms. Cutler. Yes, no problem. May it please the court. My name is Jamie Cotter and I represent the defendant Medicredit Inc. This is a case about a single unanswered phone call and a claim that that unanswered phone call violates the Fair Debt Collection Practices Act. The facts in this case are undisputed and straightforward. Plaintiff sent a letter to Medicredit asking that all calls to her cease. That letter was physically received by Medicredit on May 7th at its post office box. That letter was forwarded to the compliance department, processed, and the compliance department on May 10th logged plaintiff's complaint recognizing the cease and desist so that no further communication would be made with plaintiff. In between that time, on May 8th, Medicredit's system placed a single call to plaintiff to which she did not pick up. By virtue of these facts, plaintiff seeks $1,000 plus attorney's fees for this purely technical violation. I want to cover three topics this morning, your honors. The first is I want to discuss the application of the bona fide error defense and that will lead into the trial court sua sponte entry of summary judgment in favor of plaintiff. Starting with standing, this issue was raised in the trial court. It was not raised in the briefing on appeal here and I'll tell you why. However, standing is a jurisdictional issue that can be raised at any time and in order for this court to issue an opinion here, it has to first find the plaintiff had standing to bring her claims. Here, plaintiff conceded that she has suffered no emotional or no actual damages. She's not seeking actual damages. She doesn't claim an entitlement to them. That's in the appendix at page 69. Doesn't she get statutory damages? She is seeking statutory damages. Yes, your honor. However, the district court in evaluating whether or not plaintiff had article three standing went through and acknowledged that since the Supreme Circuit has not directly addressed standing in the context of an FDCPA claim. So, the district court looked to other circuits and district courts and found that in the district court's view, there's a distinction between procedural violations and substantive violations. The district court determined that if a plaintiff alleges a substantive violation, that's enough to convey standing. Five days after the briefing in this case was finished, the Seventh Circuit Court of Appeals, which obviously is a sister circuit, issued seven decisions, six of those in December, one in January of this year. It is the first comprehensive analysis of standing following the decision in Spokio versus Robbins. The Seventh Circuit went through and first started with a discussion about this substantive versus procedural violation. The first case I would draw your attention to is Bushman and Vocal. And certainly, your honors, we're happy to do a supplemental briefing on this if you would like. It's law from a sister circuit, so we haven't done it thus far. That case is at 982 Federal 3rd 1069. In that case, the Seventh Circuit looked at this distinction between a substantive and a procedural violation and held that for purposes of standing, a plaintiff still has to allege a concrete injury. Just alleging that a plaintiff suffered from an alleged violation of the FDCPA is not enough. So then if you look to the Larkin decision, 982 Federal 3rd 1060, the Seventh Circuit went through and said, okay, well, what does a plaintiff have to prove in order to establish this concrete injury? And what the Seventh Circuit held is that in order to establish an injury in fact, to establish Article 3 standing, a plaintiff has to prove that he or she took some action to their detriment in response to receiving a communication. An example that the court gave was paying a debt that they did not owe. But at the end of the day, the court is clear that the plaintiff has to prove what they did or what they would have done differently had they not been subject to the communication. Here, the only communication was an unanswered May 8th telephone call. Plaintiff did nothing in response to that call. Ultimately, she contacted a lawyer and filed a lawsuit. However, the Seventh Circuit in these decisions has held that that does not convey standing under Article 3. Therefore, Your Honors, we would ask that this case be dismissed for lack of standing. Is there any limit to what you're I'm sorry, for purposes of Article 3 standing? What we're talking about? Yes, to be in front of the federal court. Yes. I mean, those cases can be brought in state court. But in order for the federal court to have jurisdiction, a plaintiff has to establish an injury in fact, and that has even though it's a federal statute. Correct. That's yes. I mean, I'm not the Seventh Circuit decisions certainly don't go through those hypotheticals. But in order to establish standing, and this is the case under every federal statute, a plaintiff has to establish an injury in fact, not just a violation of the statute. So to the extent that the court finds that plaintiff does have standing to bring her claims, I want to move into application of the bona fide error defense. The trial court found here that MediCredit violated the FDCPA because it placed a single phone call to plaintiff after being told to stop after the day after it physically received the letter. Even if that was correct, MediCredit should not be held liable for that violation if the bona fide error defense applies. There's three requirements under the bona fide error defense. First, the violation has to be unintentional. Second, it has to have resulted from a bona fide error. And third, it has to be made despite the maintenance of procedures reasonably adapted to avoid the error. If I could stop, you'll probably cover this to some, but I was curious, the question for both of you. You know, the actual violation here occurred within 24 hours of receipt of the letter. You know, and we can argue about whether 24 hours is unreasonable or not. It probably is reasonable. But the third element requires us to look at the procedures of the debt collector. And so you have kind of an actual trivial violation, if any, but you have a procedure where, you know, we'd have to, you know, fight about whether three days is reasonable or not. For purposes of your legal argument, does it matter that the phone call was placed within 24 hours, or do we only look at the reasonableness of the three-day procedure that your client had in place? Either way, I think we prevail, Your Honor. But certainly here, the facts of this case is as you set forth. The letter was physically Do we ignore that? I mean, for purposes of this case, do we ignore the 24-hour period? Is that irrelevant to the legal analysis here? I'm sorry, ignore it in what way? Does it have any bearing on our analysis of the company's practices? Yeah, I believe that it does, Your Honor. And that's really the bulk of my argument. I'm going to skip over the first two elements. The district court found that the- Let's don't skip past bona fide error without you telling us- Oh, no. Correct. Yes. Was there an error, and how was it bona fide? Yes. The error was contacting a consumer after being told to stop. And that was pled in the alternative. But there's no question in the record that Mitta Credit physically received the letter on May 7th and contacted plaintiff via phone on May 8th. The district court found that that did violate the FDCPA. With respect to whether it was unintentional and bona fide, the court found that it was unintentional and it was bona fide. And the evidence that supported that was as soon as the communication was logged in the system, it was correctly coded. No further calls were placed after May 10th when the letter was coded. Yes, Judge Phillips? Oh, no, please go ahead. Okay. Yes. So from our perspective, Your Honor, we believe that the district court properly found that the error was contacting someone after they were asked to stop, but that it was unintentional and that once the letter was processed, undisputedly, no further contact was made via phone as requested by plaintiff. So then if we get into the nature of the procedures, it's important, and I think this will answer your question, Judge Timkovich, it's important to remember how this case came up with the district court. Plaintiff moved for summary judgment. Therefore, she was required to establish that there's an absence of genuine fact with respect to application of the bona fide error defense. Plaintiff argued that defendant did not have policies and procedures. Excuse me? Plaintiffs don't have to anticipate affirmative defenses? Why the plaintiff had to rebut the, or show that there was no factual dispute with respect to an affirmative defense? This is an affirmative defense, is it not? It is. And plaintiff moved for summary judgment on MediCredit's affirmative defense. They argued this in their motion for summary judgment. I agree they didn't have to raise it, but they did. And they asked the court to. All they had to do is say there's no evidence to support the third element of the defense, that their procedure's reasonably adapted. They don't have to do anything more. They don't even have to do that much. But at most, if they're going to raise it, they just have to say that the defendant hasn't presented evidence that they have this reasonable procedure. Then you have a duty to present evidence of a reasonable procedure, and they can rebut that in their reply. Correct, Your Honor. You agree with that? I do agree with you. And what happened here is plaintiff raised that argument. MediCredit responded with information about its policies and procedures. And the district court agreed with this. They found, the district court found that MediCredit has policies and procedures to code accounts such that further contact is not made after receipt of a cease and desist. That statement that describes the procedures is awfully bare bones. It doesn't say anything that would give you comfort that this is done in a timely fashion. And I can move on to that, Your Honor. Yeah, that was in the motion for reconsideration. Well, I think we had enough evidence, frankly, in our original briefing. So the first step is... Explain why you think there was enough when it doesn't mean anything about the procedures to make sure this is done in a timely fashion. Sure. This case is just like the two district cases that we cited in our briefing. I want to start with the Gebhardt case. The Gebhardt case set forth the framework for how you determine application of the bona fide error defense in the context of a lag of processing time. First question is, was there an error? Contacting a consumer after being told to stop. Second question is, are there policies and procedures? And both the Gebhardt case and the Isaac case discuss policies and procedures whereby the debt collector shows that how it codes its account for communications to stop is enough. The third step, Your Honor, which is what you're getting to, is does processing time undermine the reasonableness of those policies and procedures? The Gebhardt case said that reasonable processing time will not undermine the application of the bona fide error defense. If you look at the Isaac case, the Isaac case had a three-day processing time in between which the debt collector physically picked up the letter and when the debt collector logged that in its system. And the Isaac case found that that three-day processing time was reasonable and therefore did not undermine the ultimate reasonableness of the debt collector's policies and procedures. And frankly, that just makes sense. The purpose of the bona fide error defense is to protect debt collectors who certainly are attempting to comply with the Act and have an error that they have addressed in their policies and procedures so that it doesn't happen again. Here, the error, it's important to remember, the error is contacting somebody after they were told to stop. The district courts have said that a reasonable processing time will not undermine policies and procedures with respect to how to code accounts when somebody has been asked to stop. Go ahead. I'm sorry. To assess reasonableness, don't we need a little bit more that, you know, something about the volume of letters that your client receives, the, you know, kind of the and doesn't that kind of distinguish maybe Gebhard and Isaac from the record here? I don't think you need that information, Your Honor. But to the extent that the court found that there wasn't enough information in the record or there was a factual dispute about the reasonableness, that is a question that should have gone to the jury. So the court should have denied plaintiff's motion for summary judgment and a trial should have been held with respect to the reasonableness of the procedures. Again, in the context of plaintiff moving for summary judgment, the reasonableness of these procedures was never at issue. Therefore, at the very least, the court should have considered MediCredit's motion for reconsideration. I'd like to reserve my last 30 seconds for rebuttal, if that's okay. Thank you, counsel. Let's hear from Mr. Thompson. May it please the court. My name is Russell Thompson and I represent Elizabeth Lupia. This appeal raises issues related to a debt collector's burden when asserting a bonafide error defense under the FDCPA. Here, MediCredit sent Ms. Lupia an initial letter seeking to collect an alleged medical debt. In response, she timely exercised her FDCPA rights and sent a written dispute of the debt, the receipt of which required MediCredit to cease collection until obtaining and mailing her verification. Her letter also demanded MediCredit cease and desist from placing calls to her. MediCredit received the letter on May 7th and stamped it as received that day. The letter then continued through MediCredit's mail process, which inexplicably is designed to allow a three-day lapse between receipt of the letter and when the consumer's file is notated. Unsurprisingly, MediCredit called her during this lapse, violating section 1692 CC and GB of the FDCPA. After the close of discovery, Ms. Lupia moved for summary judgment on the defense, arguing MediCredit could not meet its burden to prove any of the elements. The district court ultimately agreed, finding MediCredit failed to establish that its procedures of logging letters into its system three days after receipt was reasonably adapted to avoid unauthorized contacts with consumers. First, I'll discuss. It seems like this is a, you know, kind of hypothetical or theoretical case because, you know, their procedures, you know, may or may not have been reasonably adapted, but what happened here, um, she was called within 24 hours and, you know, I, I think, I don't know if that would be per se reasonable, but it'd be pretty close. Um, why do we ignore what actually happened here and, you know, look at something that didn't happen, which was a three-day rule had no effect on the violation. Because of the statute itself, your honor, and the elements of the statute, the elements don't look to when the error happened. It looks to whether the error was unintentional, whether it was bona fide, and whether the debt collector had procedures in place that were reasonable and whether the procedures were reasonably adapted to avoid the specific error. And that's why that's important here. Um, so first I want to note that the court did not enter summary judgment sua sponte. Ms. Lupia moved, uh, again, noting defendant had produced no evidence and discovery, um, identifying an error, identifying procedures, identifying how they're tailored, um, no evidence related to its defense. Um, by doing this, the burden shifted for them to show a genuine issue of fact for trial. Their response acknowledged the elements and although inadmissible, presented evidence and argument in support of the defense. Further, they moved for summary judgment on their own defense as well. The district court ultimately found they could prove no set of facts to create a genuine issue of fact for trial. So summary judgment was not entered sua sponte. Um, but again, not only could MediCredit not prove any of the elements, as the court asked, it didn't identify any single error. In reply, it attempts to argue that error and violation are synonymous, but there's no legal support for this argument. And Congress used both terms when providing for the defense and it did not use them interchangeably. Reading it this way ignores common sense and also renders the word error superfluous. And again, without any error, MediCredit can't show it acted unintentionally. It can't show the non-existent error was bona fide. It can't show it maintained procedures adapted to avoid the non-existent error. And like here, where Ms. Lupia was not presented an opportunity to even conduct discovery on it. When explicitly asked to identify and describe any errors, MediCredit identified none and stated any violation would have been the result of incorrect information provided by the original creditor. That has nothing to do with this defense here. In response to request for admission four, it denied it was required to obtain and mail Ms. Lupia verification before even calling her to collect the debt. Thus, they deny that it was even an error to call her because they are adamant they were not required to cease calling her. As a result, they waived the defense. But even if they didn't, they still can't satisfy the burden. Under the Supreme Court's holding in Germain, an act may be intentional even if the actor lacked actual knowledge that her conduct violated the law. So a collector must do more than simply assert that it did not intend to violate the act. As previously mentioned, MediCredit denied it was required to obtain and mail her verification before placing the call. Thus, it intended to place the call and the placement of the call was intentional. It also argued that the violation only occurred because of the three-day lag. But as the district court pointed out correctly, it provided no explanation for this three-day lag. That's because it has none. It was known and anticipated as part of MediCredit's known mail process. MediCredit's senior vice president of operations admitted under oath that it takes three business days to process the mail and input any cease and desist letters into MediCredit's system. So that it took three days here was not unintentional. It was intentional and that it called Ms. Lupia after receipt but prior to logging the letter was neither unintentional nor due to an error that it was actively seeking to avoid. So it can't prove it acted unintentionally. Why is three days unreasonable? Three business days? If the letter came in on Friday and it's logged on Monday, is a debt collector required to have like 24-7 on-call mail processors to avoid, you know, not being eligible for the bona fide error defense? Your Honor, MediCredit's senior VP of operations had three business days. So in that instance, it wouldn't be logged until Tuesday or Wednesday, not called on Monday for a letter received after hours on Friday, if that makes sense. But again, I think the relevant issue is... Your answer would be different than if it was just three days instead of three business days. Would that be reasonable? I don't know the answer to that, Your Honor. And we don't know the answer to that here because MediCredit refused to disclose any information related to its defense such that we could perform discovery into its procedures. And again, they didn't produce any evidence even in response to summary judgment to show that the procedures were reasonable. It's for the same reason that they can't prove that it was bona fide rather than contrived because it doesn't concede a support its defense. It referred to the same response, quote, MediCredit does not concede any violation occurred. Once discovery had closed, it simply manufactured the defense, but it had to, because again, the three-day lag is not an error. It's not an error that happened causing the lag. This is a built-in into part of their process. So it worked just as intended, just as they expected. This is nothing that happened that was unexpected. Thus, the error is contrived. Finally, MediCredit can't show it. What's a typical error? Are you talking about clerical mistakes or what do you think the statute means by that term? Yes, Your Honor. I think a clerical error like that, inputting numbers incorrectly, for example, notating the incorrect file with a cease and desist, that would be a clerical error or the type of error that happened. You know, with the procedures being, we stamp it, we confirm the consumer's name, we confirm we have the right account and we do it, assuming they went through all that, it's narrowly tailored to avoid that specific error. Here, again, they didn't point to any error. The three-day lag is not an error. It's part of their process. And to prove the maintenance of procedures, the Tenth Circuit has said it's a two-step inquiry. First, whether the collector maintained procedures to avoid errors and two, whether they were reasonably adapted to avoid the error. But it can show neither because just like it failed to identify the errors, it failed to identify procedures on discovery, produce documents or identify documents related to these procedures or explain how they were reasonably adapted. So its summary judgment evidence is all inadmissible. While it argues now it had no obligation to spell out exactly how it intended to argue this defense, this frivolous argument ignores Miss Lupia's specific interrogatories requesting the principal facts supporting its defense. This is common in every single case of the federal rules. Instead, MediCredit presented its defense by ambush after the close of discovery. It cannot be allowed to disregard its duties under the federal rules and present its defense this way. But in any event, it can't show its procedures were reasonably adapted. Again, its procedures were not adapted to avoid calls within this three-day lag. Here, they would have had needed to show that they have procedures to avoid calling during the three days where they know this lag exists. There's no evidence of any procedures designed to avoid that. Rather, and they didn't even argue that, as one of your honors asked earlier, they argued repeatedly about the one day after the call, 24 hours later. But that's irrelevant to their specific procedures. If they had procedures that allowed it to happen in one day, then that would be the relevant inquiry. But instead, it ignored that its own process takes inexplicably three times as long. It simply pointed to its process time without further argument or evidence and expected the court to just assume it was inherently reasonable. Do you know what the procedure is? I know that the person who is alleged to owe the debt is told to send a letter or given that option to a post office box in Missouri. And so she did. And the letter arrived and met a credit, got the letter. Then what happened? Does it immediately? We don't know, your honor, because they didn't disclose any of this in discovery. And that's why we don't know. Had they done this, had they properly responded to the interrogatory asking for the principal facts, we would have deposed them. We would have asked, why does it take three days? Are you using a PO box in Missouri and then sending it to your compliance department in California? Because I don't think that's reasonable. It should be in the same area. Why are we creating additional lag that doesn't exist? Does the company have 100,000 letters it receives every day, yet it only has one person doing this process? I would posit that that's unreasonable, but because many credit you ask, but you still don't know is the bottom line. Correct, your honor. We asked for the principal facts supporting the defense in an interrogatory. And all MediCredit did was refer to another interrogatory response that said, we deny we violated the law. Again, we can't do MediCredit raise the bona fide defense after the close of discovery? In the summary judgment motions, your honor, yes. I believe discovery had closed. It certainly had by the time plaintiff moved for summary judgment. And I believe it had by the time defendant moved for summary judgment as well. Had it pleaded bona fide procedures or bona fide defense in its answer to the complaint? It did your honor, which is why we serve discovery requesting it, admit what the error was, identify what the error was, identify its procedures in place and identify all the, you know, the principal facts to its defense so that we could perform discovery on it. So, so, and then what happened? Did they not respond? They denied committing an error and they did not produce any documents related to any procedures. And they simply referred when asked to identify the error, they said, quote, MediCredit does not concede any violation of the FDCPA occurred. And then in a separate interrogatory, we're asked for the principal facts to support the defense. It simply said, see response to the interrogatory that says MediCredit does not concede any violation of the FDCPA occurred. We also asked them to produce in production, any policies or procedures related to their defense as well. None were produced. And again, I would, they submitted evidence on it through this affidavit in response to your motion for summary judgment. Is that right? Correct. Your honor. And that information, if go ahead, that information that they intended to rely on, at least the principal facts should have been provided to plaintiff in response to the interrogatory so that we could have deposed their senior vice president of operations and inquired further into the defense. Did you say anything like that in your reply? Did you ask, did you say that summary judgment should not be granted further discovery or that this submission by MediCredit was improper because it wasn't provided in response to your discovery request? Did you say anything about it in your reply? Yes, your honor, both in the principal motion and the reply and in response to defendant's motion for summary judgment as well. And each of the briefings, we noted how the discovery abuses and the lack of producing discovery and how they could not now rely on information that they didn't disclose during discovery. And I'd further argue that the three day, three business day lag, at least is never reasonable, no matter the size of the debt collector or the amount of the mail it receives because holding otherwise would defeat one of the express purposes of the act to ensure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. So it would instead give larger debt collectors an advantage over smaller debt collectors that can and should process letters within one business day to simply say, you just have too many debts you're collecting. Well, the answer to that is hire more employees. But again, not being allowed to do discovery on that here. Plaintiff wasn't even provided the opportunity to do it. The FDCPA is a strict liability statute. Counsel, you've got 23 seconds. Are you going to respond on standing? Your honor, I can quickly respond on standing. Actual damages are not required to establish an injury in fact. And here the injury is the exact injury Congress sought to avoid contacting a written dispute of the debt. How did the Seventh Circuit go wrong? I'm not familiar with whatever cases that counsel is referring to. So I couldn't respond directly. But here, a lot of the times what the courts look to is whether Congress is trying to protect a concrete harm that can be found in the common law. Here, contacting a consumer after they've requested no such contact and send a dispute prohibiting such contact, contacting that consumer is an invasion of privacy. And that's what Congress thought to avoid here. Invading this consumer's privacy of being called at home and harassed at home when specifically asked not to do it. That she didn't answer the call and speak to them doesn't change the fact that they left her a voicemail specifically telling her again that they were calling to collect a debt from her after she specifically told them to stop calling. So we would request the court affirm. Thank you, counsel. There's a little bit of rebuttal for Ms. Cotter. Yes, just briefly. We believe that plaintiff's argument with respect to this idea that we didn't produce information and discovery and were therefore precluded from using it was not raised in the trial court. In the trial court, plaintiff argued that there were no policies and procedures. We responded with information about our policies and procedures. The reply had one sentence. Defendant fails to identify and produce any applicable policies and procedures. There was simply nothing with respect to an argument that we should be precluded from relying on that information and summary judgment. Therefore, that was an issue that was not raised in the trial court and therefore can't be raised here. Thank you, your honors. Thank you, counsel. You're excused. We appreciate the fine arguments. Your case shall be submitted. The court will be in recess until nine o'clock tomorrow morning. Thank you. You're excused.